IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN D. A.,[1]  )
 )
      Plaintiff,  )
 )
vs.  ) Case No. 17-cv-819-CJP[2]
 )
COMMISSIONER OF SOCIAL  )
SECURITY,  )
 )
      Defendant.  )
 )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB and SSI in February 2015, alleging disability beginning on December 20, 2014. (Tr. 20). A prior application had been denied as of December 19, 2014. (Tr. 172-192). After holding two evidentiary hearings,

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 34.

ALJ Jason R. Yoder denied the application for benefits in a decision dated February 10, 2017. (Tr. 20-31). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to account for cyclothymic disorder in formulating plaintiff's RFC.

2. The Appeals Council erred in rejecting additional evidence submitted by plaintiff because the evidence was relevant and material.

## Applicable Legal Standards

To qualify for DIB or SSI a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work

experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial

experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial

evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Yoder followed the five-step analytical framework described above. He determined that plaintiff had worked at the level of substantial gainful activity for short periods since the alleged onset date. He was insured for DIB through September 30, 2016.[4] He found that plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine, history of neuropathy, and obesity. Plaintiff also had mental impairments of depressive disorder NOS, anxiety disorder, panic disorder without agoraphobia, and alcohol disorder in remission. The ALJ determined that these mental impairments were not severe.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level, with some physical limitations. Based

---
[4] The date last insured is relevant only to the claim for DIB.

on the testimony of a vocational expert, the ALJ found that plaintiff was able to do his past work as an automobile salesperson. In the alternative, he was also able to do other jobs which exist in significant numbers in the national and regional economy.

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1963 and was 51 years old on the alleged onset date of December 20, 2014. (Tr. 376). He had worked as a car salesman from 1992 through 2001. From 2003 through 2012, he was self-employed doing pressure washing and blacktop sealing. (Tr. 379).

Plaintiff said he could not work because of severe neck and back problems, arthritis, depression, and high blood pressure. He was 5' 10" tall and weighed 190 pounds. He said he stopped working in March 2012 because of his condition. He had completed 3 years of college. (Tr. 388-389).

Plaintiff took Prozac, prescribed by Eldorado Rural Health Clinic, and Valium, prescribed by Marion Pain Management Center, for depression. (Tr. 390).

Plaintiff and his wife submitted reports in May 2015 indicating that plaintiff had no difficulty with concentration, memory, completing tasks, understanding,

following instructions, or getting along with others. (Tr. 416, 427).

## 2. Evidentiary Hearings

Plaintiff was not represented by an attorney at the evidentiary hearings. (Tr. 62-64).

The first hearing was in July 2016. Plaintiff testified that he worked as a "fire watcher" for TrueBlue Enterprises from the second half of 2015 through May 2016. He sat on a bucket with a fire extinguisher while people were welding. He was laid off from that job. (Tr. 71-75). He testified that he could still do that job. (Tr. 113).

A vocational expert (VE) also testified. In response to a hypothetical question corresponding to the ultimate RFC findings, she testified that that this person could do plaintiff's past work as a car salesman. He could also do other jobs such as inspector/hand packer, bench worker, and office helper. (Tr. 124-127).

A supplemental hearing was held in January 2017. (Tr. 484). Plaintiff was again unrepresented. (Tr. 39). The ALJ had obtained additional earnings records, and plaintiff submitted new medical evidence in the form of a report from a treating physician's assistant. (Tr. 42).

## 3. Relevant Medical Treatment

Plaintiff was seen at Pain Management Center of Marion for neck and back pain beginning in January 2014. He was diagnosed with a number of conditions,

including lumbar and cervical disc displacement and disc degeneration; generalized anxiety disorder; major depression, recurrent; and panic disorder. (Tr. 582-594).

In November 2014, he was experiencing about 60% improvement with medical therapy. He was taking a number of medications, including Oxycodone-Acetaminophen (Percocet), Prozac, and Valium. His anxiety disorder, depression, and panic disorder were stable. (Tr. 567-569).

Plaintiff was seen at Eldorado Rural Health Clinic from January through October 2014. (Tr. 530-556). He was treated for anxiety, among other conditions. He was seen by a psychiatrist, Dr. Chandra, in January 2014, for medication management. Dr. Chandra noted a history of a cyclothymic disorder. (Tr. 530).

The alleged date of onset is December 20, 2014.

Plaintiff was seen at the Pain Management Center in January and March 2015. His anxiety disorder, depression, and panic disorder continued to be stable. In March, he was described as "happy with the progress and improvement." (Tr. 560-566). Neurontin was added in May 2015 because of some burning in his neck. (Tr. 648). He was seen regularly through June 2016. (Tr. 630-650; 667-681). In March 2016, he said he had more pain and he wanted to try injections. (Tr. 630). He had cervical and lumbar injections in May and June 2016. (Tr. 669-672). He was not diagnosed with or treated for cyclothymic disorder at this facility.

Plaintiff received primary health care at Eldorado Rural Health Clinic. The transcript contains records from May 2015 through March 2016 at Tr. 654-666. In May 2015, he was seen for generalized anxiety disorder. His mood was depressed and his affect was flat and sad. His prescriptions were refilled, including Prozac. Plaintiff was treated for anxiety and depression, among other conditions, but he was not diagnosed with or treated for cyclothymic disorder during this period at this facility.

4. **Consultative Examinations**

In connection with plaintiff's prior application, David Warshauer, Ph.D., performed a consultative psychological exam in December 2013. He concluded that plaintiff oriented in four spheres and answered questions in a relevant and coherent manner. His intelligence was estimated in the normal range and may be higher. Mood and affect were normal but he appeared to be in pain. The diagnosis was cyclothymic disorder. (Tr. 499-501).

In September 2015, Fred D. Klug, Ph.D., performed a consultative psychological exam in connection with the current application. Plaintiff told him that he was unable to work because of pain in his back and anxiety. He said he had no history of mental health treatment, but was taking psychotropic medications. Dr. Klug concluded that his attention span was adequate and concentration as good. His immediate memory varied. Insight and judgment were poor. He diagnosed pain disorder associated with psychological factors and a medical condition; generalized anxiety disorder; alcohol dependence in remission; and

depressive disorder NOS.  (Tr. 622-626).

5. **Opinions of Treating Source**

In December 2016, PA Curtis Morris, who practiced at Eldorado Rural Health Clinic, stated in a letter that plaintiff had chronic cervical and lumbar disc disease with nerve root compression at L4-5 and L5-S1 and moderate foraminal stenosis of C5-6.  He did not mention any mental health diagnoses.  (Tr. 682).

6. **Records not before the ALJ**

The transcript contains medical records that were not before the ALJ.  As of the time the ALJ issued his decision, the medical records consisted of Exhibits B1F through B11F, i.e., Tr. 497 through 682.  See, List of Exhibits attached to ALJ's decision, Tr. 36.  Plaintiff submitted the additional records to the Appeals Council in connection with his request for review.  The medical records at Tr. 683-719 were not before the ALJ and cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence.  Records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error." *Luna v. Shalala*, 22 F3d 687, 689 (7th Cir. 1994).  See also, *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).

## Analysis

Plaintiff's first argument must be rejected because he was not diagnosed with

or treated for cyclothymic disorder during the period at issue.[5]

There are two references to cyclothymic disorder in the record. First, Dr. David Warshauer examined plaintiff in December 2013 and diagnosed cyclothymic disorder. Secondly, Dr. Chandra noted a history of cyclothymic disorder in January 2014.

Plaintiff's prior application was denied on December 19, 2014. Plaintiff did not seek judicial review of that denial. Therefore, the decision of December 19, 2014, stands as a determination that plaintiff was not disabled as of that date. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Plaintiff argues that the ALJ was wrong to discount Dr. Warshauer's opinion in denying the prior application, but the prior application has not been reopened. The Court cannot consider claims of error in denying the prior application. Similarly, his argument that ALJ Yoder was required to weigh Dr. Warshauer's opinion must be rejected because Dr. Warshauer's exam predated the denial of the prior application.

Plaintiff was treated for depression and anxiety during the period in issue. The ALJ acknowledged that he had mental impairments of depressive disorder NOS, anxiety disorder, panic disorder without agoraphobia, and alcohol disorder in remission, but determined that these mental impairments were not severe. Plaintiff does not argue that the ALJ overlooked or ignored any evidence relating to his mental health from the relevant time period. Plaintiff discusses cyclothymic

---

[5] Cyclothymic disorder "is a rare mood disorder [which] causes emotional ups and downs, but they're not as extreme as those in bipolar I or II disorder." https://www.mayoclinic.org/symptoms-causes/syc-20371275 (visited July 16, 2018).

disorder in a general way in his brief, but he points to no evidence suggesting that he was diagnosed with or treated for cyclothymic disorder during the period in issue or that cyclothymic disorder cause him any symptoms that are distinguishable from the symptoms caused by the mental impairments identified by the ALJ. The ALJ considered those symptoms and determined that plaintiff's mental impairments were not severe. Notably, plaintiff does not argue that the ALJ erred in concluding that his depressive disorder NOS, anxiety disorder, panic disorder without agoraphobia, and alcohol disorder in remission, were not severe.

Plaintiff also argues that the ALJ erred in failing to conduct the "special technique" analysis with regard to cyclothymic disorder. This argument is a red herring because plaintiff was not diagnosed with or treated for cyclothymic disorder during the period at issue.

Plaintiff next argues that the Appeals Council erroneously failed to consider and "exhibit" (i.e., label as exhibits and make a part of the record) the additional records he submitted in connection with his request for review.

The records consist of office notes from Pain Management Center of Marion dated October 2016 through February 6, 2017 (Tr. 684-694), an office note from Pain Management Center of Marion dated March 1, 2017 (Tr. 695-697), office notes from Eldorado Rural Health Clinic dated February 2016 through February 20, 2017, and radiology reports from March 2017 (Tr. 700-719). These records were not "exhibited" by the Appeals Council, but they are contained in the transcript

which was filed on February 21, 2018.[6]

The regulation governing Appeals Council review, 20 C.F.R. § 404.970, was amended effective January 17, 2017, applicable as of May 1, 2017. 81 FR 90987. Although not cited by plaintiff, the revised regulation was applied by the Appeals Council here. The relevant part of the revised regulation provides:

> (a) The Appeals Council will review a case if—
>
> . . . .
>
> (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 404.970(a)(5).

Subsection (b) of that section provides that the Appeals Council will only consider new evidence under paragraph (a)(5) if the claimant shows "good cause" for not submitting the evidence to the ALJ before the ALJ's decision. Good cause is defined as having been misled by some action of the agency; being prevented by a physical, mental, educational, or linguistic limitation; or a being prevented by an unusual, unexpected, or unavoidable circumstance beyond the claimant's control.

The old version of the applicable section, denominated 20 C.F.R. § 404.970(b), provided:

> If new and material evidence is submitted, the Appeals Council shall

---

[6] A prior version of the transcript was filed in October 2017, but that version did not include the records submitted to the Appeals Council. On defendant's motion, that version of the transcript was stricken, and defendant filed the version containing the records at Doc. 23. See, Docs. 21-22.

consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain review in this Court of a "final decision of the Commissioner of Social Security." When the Appeals Council denies a request for review, as happened here, the decision of the ALJ becomes the final decision of the Commissioner, and it is the decision of the ALJ which is reviewed by this Court. 20 C.F.R. §404.981; *Eads v. Secretary of Dept. of Health and Human Services*, 983 F.2d 815, 816 (7th Cir. 1993). The decision of the Appeals Council denying review, as opposed to an order refusing to consider additional evidence, is within the discretion of the Appeals Council. It is not the final decision of the Commissioner, and it is not subject to review by this Court. 42 U.S.C. § 405(g); *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

However, the Court may consider the issue of whether an Appeals Council order refusing to consider additional evidence was the result of a mistake of law. *Farrell v. Astrue*, 692 F.3d 767, 770-771 (7th Cir. 2012); *Eads v. Secretary of Dept. of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993).

Judicial review of an Appeals Council decision is available as follows:

> Our ability to review the Appeals Council's decision in the instant case is dependent on the grounds on which the Council declined to grant plenary review. If the Council determined [plaintiff's] newly submitted evidence was, for whatever reason, not new and material, and

> therefore deemed the evidence "non-qualifying under the regulation," we retain jurisdiction to review that conclusion for legal error. [internal citations omitted]. However, if the Appeals Council deemed the evidence new, material, and time-relevant but denied plenary review of the ALJ's decision based on its conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was "contrary to the weight of the evidence"—the Council's decision not to engage in plenary review is "discretionary and unreviewable." *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir.1997).

*Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015).

Evidence is "new" where it was "not in existence or available to the claimant at the time of the administrative proceeding." Evidence is "material" if it creates a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Stepp,* 795 F.3d 711, 725 (7th Cir. 2015).

The cases discussed above were considering the old version of § 404.970, but they appear to still be applicable under the current version of the regulation. The new regulation does not make a substantive change, but simply incorporates the Seventh Circuit's understanding of materiality, i.e., the additional evidence would be likely to change the outcome of the decision.

With regard to plaintiff's additional evidence, the Appeals Council here stated, "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." (Tr. 2).

Plaintiff argues that the second sentence of the Appeals Council statement

establishes that it did not consider the evidence at all, in violation of the old version of § 404.970(b), which required that the Appeals Council to "shall consider" new evidence submitted to it. Doc. 25, p. 13. However, the current version of the regulation, which is applicable here, does not contain that language.

The Court agrees with defendant that the Appeals Council's explanation means that it considered the additional evidence and determined that it was not material because it was not likely to change the outcome of the case. Obviously, the Appeals Council could not have concluded that the additional evidence "does not show a reasonable probability that it would change the outcome of the decision" if it had not considered the additional evidence at all. The second sentence is admittedly not as clear as it could be. However, read in context, the second sentence most plausibly means that the Appeals Council did not consider the additional evidence as part of a plenary review because it denied review.

Plaintiff has not demonstrated that the Appeals Council determination that the additional evidence was non-qualifying under the regulation was erroneous. The Court notes that plaintiff has made no showing that the additional evidence is "new" within the meaning of S*tepp*.[7] The ALJ's decision was dated February 10, 2017. Almost all of the additional evidence predated that decision; only one office note from Pain Management Center of Marion and one office note from Eldorado Rural Health Clinic, along with the radiology reports from March 2017, occurred

---

[7] The Seventh Circuit recently declined to reconsider the *Stepp* definition of new evidence. *McFadden v. Berryhill*, 721 F. App'x 501, 506 (7th Cir. 2018)(nonprecedential).

after the ALJ's decision. Plaintiff makes no attempt to show that the evidence which predated the ALJ's decision was not available to him during the administrative proceedings. The Court notes that plaintiff has not argued that the ALJ failed to develop the record. Nor does plaintiff make any attempt to demonstrate that the records that post-date the ALJ's decision would be likely to change the outcome of the decision. In fact, those records document findings that are largely duplicative of entries contained in the records that were before the ALJ.

Plaintiff has not identified any errors requiring remand or demonstrated that the ALJ's decision was not supported by substantial evidence. Therefore, ALJ Yoder's decision must be affirmed.

### Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Yoder committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: July 17, 2018.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**